UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
                                    :
UNITED STATES OF AMERICA    :      Hon. Stanley R. Chesler, U.S.D.J.
                                    :
v.                                  :      No. 9-cr-004(SRC)
                                    :
EDWARD COBB                         :
                                    :
                                    :
_____:

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO EXTEND SURRENDER DATE OR IN THE ALTERNATIVE TO VACATE HIS SENTENCE**

---

 

 

**PAUL J. FISHMAN**
**United States Attorney**


**V. Grady O'Malley**
**Sr. Litigation Counsel**

 

**On the Brief:**

**STEVE H. DEL MAURO**

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF THE CASE................................................................................................... 2

ARGUMENT ............................................................................................................................... 4

    I.  This Court Should Deny Defendant's Motion to Extend the Self-surrender Date Six Additional Months Because it is a Manipulative Attempt to Avoid Serving Time for the Crimes to Which He Pled Guilty. ............................................................................................... 4

    II. A Modification of Mr. Cobb's Sentence Pursuant to 28 U.S.C. § 2255 is Not Appropriate Because the Statute of Limitations Prohibits Such an Amendment at This Time. ...................... 6

    III.  Mr. Cobb's Request For Leave to File a Writ of Audita Querela Should be Denied Because 28 U.S.C. § 2255 Governs a Challenge to a Sentencing and Request For Modification. ................................................................................................................................ 9

CONCLUSION.......................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

Massey v. United States, 581 F.3d 172 (3d Cir. 2009) .................................................................. 9

Pennsylvania Bureau of Correction v. U.S. Marshals Serv., 474 U.S. 34 (1985) ......................... 9

United States v. Baron, 914 F. Supp. 660, 663 (D. Mass. 1995) .................................................... 8

United States v. Correa, 500 F. App'x 128, 130 (3d Cir. 2012) .................................................. 10

United States v. Johnson, 634 F.2d 94, 95 (3d Cir. 1980) ............................................................. 7

United States v. Kimberlin, 675 F.2d 866, 869 (7th Cir. 1982) .................................................... 10

United States v. Roiux, 97 F.3d 648, 662-63 (2d Cir. 1996) .......................................................... 8

United States v. Valdez-Pacheco, 237 F.3d 1077, 1080 (9th Cir. 2001) ...................................... 10

**United States Statutes**

18 U.S.C. § 3582(c)(1)(B) ............................................................................................................. 6

18 U.S.C. § 3742 ............................................................................................................................ 8

18 U.S.C. § 924(c)(1)(A)(ii) .......................................................................................................... 2

18 U.S.C. §§ 1951 .......................................................................................................................... 2

28 U.S.C. § 2241 .......................................................................................................................... 10

28 U.S.C. § 2255 .................................................................................................................... passim

**Rules**

Fed. R. Crim. Pr. 35(a) ................................................................................................................... 9

## PRELIMINARY STATEMENT

Defendant, Mr. Edward Cobb, pled guilty on January 5, 2009 for a series of violent crimes he committed in the fall of 2003.  After granting a Government 5K1.1 guidelines submission, the Hon. Dennis M. Cavanaugh sentenced Mr. Cobb to a forty-two month term of imprisonment.  Since the day of sentencing, September 19, 2011, however, he has had a succession of health obstacles that have delayed his surrender.  For example, Mr. Cobb has had a hip replacement, with the requisite rehabilitation time. Then he had a series of surgical procedures to remove small lumps in the breast area.  And, finally, he is now alleged to have "early onset" dementia.  Because of these never ending health problems, Mr. Cobb has successfully delayed surrendering himself to the Bureau of Prisons for three years.  At this juncture, Mr. Cobb is attempting to now do away with the sentence altogether or in the alternative to extend "ad infinitum"  his self-surrender date because of anticipated medical treatments and the subsequent monitoring that, he argues, comes with it.

The Government asks that this Court deny Mr. Cobb's request to vacate his sentence or in the alternative to extend his self-surrender date any longer.  Currently, his surrender date is set for January 14, 2015 – over three years past the day he was sentenced and twelve years since he committed the crimes.  Mr. Cobb has postponed the inevitable long enough and cannot continue to use his health issues to avoid the commencement of his sentence.  Additionally, a modification of Mr. Cobb's sentence under 28 U.S.C. § 2255 is barred because of the statute of limitations. Further, Mr. Cobb's request, in the alternative, for issuance of a writ of *audita querela* modifying his sentence to one of probation, conditioned upon a period of substantial home confinement, should be denied.

**STATEMENT OF THE CASE**

Mr. Cobb pled guilty, before the Honorable Joseph A. Greenaway, Jr. U.S.D.J. on January 5, 2009, to two counts of conspiracy in violation of 18 U.S.C. §§ 1951(a) and (b)(1), and one count of aiding and abetting in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  His case was later reassigned to the Honorable Dennis M. Cavanaugh, U.S.D.J. for sentencing because of Judge Greenaway's appointment to the United States Court of Appeals for the Third Circuit.

The May 25, 2011 final presentence report depicted Mr. Cobb's health to be strong, but for some slight arthritis in the knee and hip.  Mr. Cobb had a life expectancy of 27.7 years at the time; this state of health continued to the date of sentencing, September 19, 2011.  The Court, in consideration of his acceptance of responsibility and for cooperation subsequent to these crimes and his good health, sentenced Mr. Cobb to a forty-two month term of imprisonment.

Since that time in 2012, Mr. Cobb alleges that his health has suddenly and dramatically begun to decline.  A letter from Dr. Sacchini, M.D. dated November 13, 2012 describes Mr. Cobb's scheduling for a right lumpectomy and the "chemo prevention therapy program" with which he was being treated. Regan Cert., Exh. M.  His surrender date was accordingly postponed.  As his next surrender date loomed, Mr. Cobb advised that his health was further declining.  Dr. Kenneth Mark, M.D., F.A.A.D., F.A.C.M.S., explained that Mr. Cobb "has had 13 surgical procedures" in the past year, had a pathology report that confirmed "INVASIVE CARCINOMA," and is at serious risk because of a weakened immune system.  Regan Cert., Exh. J.  Dr. Mark later writes in December of 2013 that Mr. Cobb is officially diagnosed with Alzheimer's disease, Regan Cert., Exh. I; although it appears that his alleged early onset dementia is being treated with Aricept, a drug that seems to be available to the Bureau of Prisons.

The medical procedures that Mr. Cobb's has engaged in have only begun since the beginning of 2012.  One could argue that the combination of these ailments have allowed him to simply postpone his self-surrender date from past dates until now.  Currently, he is being treated by four main physicians: Kenneth Mark, M.D., F.A.A.D., F.A.C.M.S.; Betty Mintz, M.D.; Virgilio Sacchini, M.D.; and Mark Hartzband, M.D., F.A.A.O.S.  Dr. Mark claims Mr. Cobb's "mental status has deteriorated dramatically" and his cancer concerns have only grown.  Regan Cert., Exh. D.  He also wrote on June 19, 2014 about a new, special cancer drug that Mr. Cobb <u>might be eligible to take</u>. "Mr. Cobb is also likely to receive a new cancer drug, which would require monthly monitoring and testing for 3 years, IF he can tolerate the side effects..."  Regan Cert., Exh. D.  Dr. Mintz is treating Mr. Cobb purportedly for progressive dementia with the drug Aricept.  Regan Cert., Exh. C.  Finally, Dr. Hartzband performed a routine hip replacement on September 22, 2014 which was delayed, conveniently, to coincide with another surrender date and attributed to his other medical problems.  Regan Cert., Exh. B.  All of these doctors assert that Mr. Cobb's poor health requires constant medical attention.  Collectively, one would think that Mr. Cobb is ready for hospice care.  A condition that would seem to preclude a recent casual dinner at a local restaurant, as the Government has been advised.

    Mr. Cobb cites the discouraging letters from his four physicians as proof that his current condition warrants yet another, in an endless number of extensions for self-surrender.  Additionally, Mr. Cobb presents a letter from Phillip S. Wise (former Assistant Director of the Federal Bureau of Prisons ("BOP")) who states that the Federal Correction Complex at Beaumont, Texas, where the BOP designated Mr. Cobb to serve his sentence, is unable to provide the level of care he needs.  Regan Cert., Exh. A.  However, Mr. Wise sends mixed messages. On the one hand he claims that the BOP is ill equipped to handle a patient such as Mr.

Cobb, but then concedes the possibility that Mr. Cobb could receive Aricept, a drug that is not normally provided to inmates. Id. at 12. Treatment from medical specialists is also a possibility, so long as he goes through the appropriate internal channels. Id. at 13. Additionally, the BOP institutions have strong programs in place to care for those who need even the most challenging medical attention. The institutions are ranked from one to four based on the medical care that can be provided; four being a facility that is capable of caring for very ill patients, as Mr. Cobb has described himself to be. Id. at 6. For example, The Federal Medical Center at Butner, North Carolina has an entire "oncology center", with on site medical and radiology oncologists." Id. The Mayo Clinic, one of the most respected medical hospitals in the world is also a facility that the BOP has access to. Once Mr. Cobb surrenders himself, and his condition is evaluated, there is no question that he will receive treatment for his legitimate ailments.

## ARGUMENT

**I. This Court Should Deny Defendant's Motion to Extend the Self-surrender Date Six Additional Months Because it is a Manipulative Attempt to Avoid Serving Time for the Crimes to Which He Pled Guilty.**

Mr. Cobb managed to postpone his self-surrender date three years using a purported deteriorating health status as his footbridge to freedom. Starting in 2012, Mr. Cobb has experienced an extensive list of ailments that require constant monitoring and treatment; the reasons he has used time and again to postpone his surrendering. For example, Dr. Virgilio Sacchini, M.D., discusses Mr. Cobb's "fragile state of health" because of a diminished immune system and the scheduling of a lumpectomy. Regan Cert., Exh. M. A letter from Dr. Kenneth Mark, M.D., F.A.A.D., F.A.C.M.S., dated June 2, 2013, explains the "13 surgical procedures" Mr. Cobb endured within one year, the breast cancer diagnosis, and lastly the onset of dementia.

Regan Cert., Exh. J.   Mr. Cobb's health concerns have expanded with time.  Hence, his requests for postponements have gone from 60 to 90 days to six month increments, in order to receive treatments he feels can only be received in the private sector.  Mr. Cobb contends the medical treatment provided in prison is insufficient to meet his current needs and would have dire, even fatal results.  Although the services provided by the BOP may not match the instantaneous access from his current physicians, it is by no means an inadequate program when catering to the health conditions of federal inmates.  Regan Cert., Exh. A.  The appropriate response to a person who is directed to serve time with health complications, such as Mr. Cobb, would be to send him/her to a level four institution such as Butner.  In such a facility, for example, there is an oncology center with actual "on site medical and radiology oncologists." Id. at 10.  Despite his negativity, Phillip Wise concedes in his letter that Mr. Cobb will still be able to receive treatment from medical specialists, with the help of his BOP clinician.  Id. at 13.

     Mr. Cobb's main argument for an extension of his surrender date is to continue treatment with drugs that are "not offered" by the BOP.  An example is Aricept, the drug he currently takes to slow the progression of his purported Alzheimer's disease.  Even were the BOP not to offer the exact drugs he currently takes, they certainly offer adequate alternatives.  Additionally, Mr. Wise even stated that Aricept can potentially be provided for Mr. Cobb after his BOP physician completes an algorithm.  Regan Cert., Exh. A.  It appears that his sense of entitlement to certain medications is misguided considering he should be in prison.   A letter by Dr. Kenneth Mark, M.D., F.A.A.D., F.A.C.M.S., dated June 19, 2014, describes a new, special cancer drug that Mr. Cobb has yet to receive but might be eligible to take. "Mr. Cobb is also likely to receive a new cancer drug, which would require monthly monitoring and testing for 3 years, IF he can tolerate the side effects..."  Regan Cert., Exh. D.  This court should not postpone Mr. Cobb's surrender

date for 6 month increments because he **may be eligible** to become a test subject for a new drug. These types of cancer treatments are a privilege, not a right, and Mr. Cobb should not be allowed to evade the consequences of the crimes to enjoy such advantages.

Additionally, if this Court continues to grant Mr. Cobb extended and repeated extensions due to his health, it is likely that he will accomplish what the law cannot, namely to completely avoid serving any time in prison.  At a certain point, however, this Court must take the bold step of allowing the Bureau of Prisons to undertake what Congress has dictated for years, which is the BOP's "mission" to, among other things, provide the proper and necessary health coverage for its prison inmates, both healthy and those facing chalenges.  As it stands, it appears as though the defendant intends to continue an abuse of the Court's good conscience.  Mr. Cobb, who pled guilty in 2009, should not be allowed to avoid the inevitable.

Because Mr. Cobb has already postponed his surrender date for three years and it appears that he will be able to exploit his health condition endlessly, this Court should deny his motion to extend the self-surrender date six additional months.

## II. A Modification of Mr. Cobb's Sentence Pursuant to 28 U.S.C. § 2255 is Not Appropriate Because the Statute of Limitations Prohibits Such an Amendment at This Time.

Mr. Cobb correctly references 18 U.S.C. § 3582(c)(1)(B) as the source which grants courts the authority to modify a previously imposed sentence.  The statute states that "the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure."  18 U.S.C. § 3582(c)(1)(B). Unfortunately for Mr. Cobb, Rule 35 does not provide a remedy here because it only allows a court to modify a sentence within fourteen days after it is announced to correct "clear error." Fed. R. Crim. Pr. 35(a).  The sentence was announced on September 19, 2011; this motion is

6

long passed that fourteen day limitation. The time limitations contained in Rule 35 have been held to be "jurisdictional and cannot, under any circumstances, be extended by order of the court." United States v. Johnson, 634 F.2d 94, 95 (3d Cir. 1980) (*citing* United States v. Robinson, 457 F.2d 1319 (3d Cir. 1972)). Furthermore, there has been no cooperation within a year of the sentencing to implicate Section 35 (b).

As an alternative means to modify his sentence, Mr. Cobb invokes 28 U.S.C. § 2255 along with the Eighth Amendment.[1] Again, Mr. Cobb is barred by the statute of limitations; 28 U.S.C. § 2255(f)(4) restricts a movant using the statute to file the complaint within one year from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. §2255(f)(4). Mr. Cobb asserts that this motion is timely filed because his poor health, the basis for the claim, did not reach its existing point until this past year. (Def.'s Mot., footnote 5, at 14) Accordingly, Mr. Cobb's debilitating health status apparently reopens and hen extends the statute's limitation period. This claim as with others is unpersuasive.

In fact, operating under this interpretation, Counsel suggests there may have been occasions in the past three years where Mr. Cobb's health alone may have been reason to attempt a sentence modification under 28 U.S.C. § 2255 and the Eighth Amendment. For example, on June 2, 2013, Dr. Kenneth Mark, M.D., F.A.A.D., FA.C.M.S. describes "major medical issues, including possible cancerous breast tumors; including severely compromised immune system..." Regan Cert., Exh. J. Yet no application was made under 2255 at that time when the "original sentence could become a cruel and unusual life sentence." (Def.'s Mot. at 10). Under his analysis, the facts as they stood on June 2, 2013 could just as well have rationalized this claim.

---

[1] *See* 28 U.S.C. §2255(a) ("A prisoner in custody under sentence of a court... claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution... may move the court which imposed the sentence to vacate, set aside, or correct the sentence.").

Now, with the on set of dementia, Mr. Cobb feels it's the right time to argue that the statute of limitations should start later.

Under this mindset, Mr. Cobb can reset the statute of limitations clock every time his health condition changes. Consequently, he could be given immunity from any time restraint in his filing of a sentence modification, so long as his doctor can diagnose him with something different. Congress certainly did not intend for such a situation. Further, if this Court were to accept his argument, then the flood gates would be open for all persons who want a modified sentence and can simply produce a physician's report reflecting real and imagined conditions. Title 28 U.S.C. § 2255(f)(4) simply states that the statute of limitations begin when there are facts to *support* the claim presented, not when the *strongest* facts are discovered.

In his motion, Mr. Cobb cites several cases which superficially support a finding that a person's health condition should be considered when determining a sentence. *See e.g.* United States v. Roiux, 97 F.3d 648, 662-63 (2d Cir. 1996); *see also* United States v. Baron, 914 F. Supp. 660, 663 (D. Mass. 1995). Although that argument may have some validity, these cases are factually distinct from this situation because at the time of Mr. Cobb's sentencing he had a clean bill of health. In fact, his presentence report gave him a life expectancy of 27.7 years. The cases Mr. Cobb cites discuss a downward sentence when a defendant's health is poor *at the time of* sentencing. It makes no difference that his health has since changed when looking at the appropriateness of the sentencing court's determination.

Even if Mr. Cobb was to appeal this Court's final sentence pursuant to 18 U.S.C. § 3742, the Court of Appeals is confined to review only "the presentence report and the information submitted during the sentencing proceeding." 18 U.S.C. §§ 3742(d)(2)-(3). Both of which, in

this case, describe Mr. Cobb as healthy and in no need of medical attention.  Consequently, it appears the Third Circuit in all likelihood would uphold the sentencing court's decision.

Because Mr. Cobb is barred by the statute of limitations, and the sentence was determined in conjunction with an accurate presentence report at the time, this Court must deny his motion to modify the sentence pursuant to 28 U.S.C. § 2255.

**III. Mr. Cobb's Request For Leave to File a Writ of Audita Querela Should be Denied Because 28 U.S.C. § 2255 Governs a Challenge to a Sentencing and Request For Modification.**

Granting Mr. Cobb leave to file a writ of *audita querela* is inappropriate because he already had his chance to seek a modification of the sentence under 28 U.S.C. § 2255.  This writ is sometimes warranted "to the extent that it fills in gaps in the current system of post-conviction relief."  Massey v. United States, 581 F.3d 172, 174 (3d Cir. 2009).  However, "where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling."  Id. (citing Pennsylvania Bureau of Correction v. U.S. Marshals Serv., 474 U.S. 34, 43 (1985)).  Modification of a sentence is specifically covered under 28 U.S.C. § 2255; thus, a writ of *audita querela* is of no relevance in this present matter.

Mr. Cobb may not request leave to file a writ of *audita* querela simply because he failed to meet the statute of limitations of the appropriate statute at issue.  The Third Circuit denied a federal prisoner's petition for a writ of *audita querela* because they held the appropriate method for him to seek relief was through 28 U.S.C. § 2255(h) and he simply failed to satisfy those requirements.  Massey v. United States, 581 F.3d 172, 174 (3d Cir. 2009) ("Massey may not seek relief through a petition for a writ of audita querela on the basis of his inability to satisfy the requirements... for filing a second or successive § 2255 motion to vacate sentence."); United States v. Correa, 500 F. App'x 128, 130 (3d Cir. 2012) (denying defendant's petition for *audita*

9

*querela* because a claim that one's sentence is unconstitutional can be raised through 28 U.S.C. § 2255); *see also* United States v. Kimberlin, 675 F.2d 866, 869 (7th Cir. 1982) (asserting that *auidita querela* "cannot lie simply to enable a defendant to file a section 2255 motion without complying with the rules governing such motions..."). The writ of *audita querela* is not intended to provide a "Plan B" for defendants who are barred from raising claims in the appropriate manner by the statute of limitations. Mr. Cobb had the option of seeking a modification of his sentence under 28 U.S.C. § 2255 but elected not to.

Undeterred, defendant argues that a "gap" exists if this Court does not accept his argument under 28 U.S.C. § 2255, because 28 U.S.C. § 2241 only applies after a defendant has surrendered to the BOP; thus, this situation warrants leave to file a writ of *audita querela* for appropriate relief. This argument, however, is a facile misinterpretation of the writ's purpose. The Ninth Circuit explained that "[a] prisoner may not circumvent valid congressional limitations on collateral attacks by asserting that those very limitations **create a gap** in the postconviction remedies that must be filled by the common law writs." United States v. Valdez-Pacheco, 237 F.3d 1077, 1080 (9th Cir. 2001) (denying his petition for writ of *audita querela* "[b]ecause Valdez's claims are cognizable in a §2255 motion to vacate his conviction and sentence"). In other words, a person cannot allege that a gap exists in post-conviction relief simply because the remedies that do exist have limitations that exclude them from raising the claim. Alternatively speaking, the fact that a defendant is barred from raising a claim because of the statute of limitations, for example, does not mean that there is a gap in relief. Instead, it means that the defendant was provided with the opportunity for judicial relief but was unsuccessful in taking the appropriate measures to achieve such an end; in Mr. Cobb's situation, he was unsuccessful in filing his motion in a timely manner.

Mr. Cobb's request for leave to file a writ of *audita querela* should be denied because 28 U.S.C. § 2255 was the appropriate statute to use for a challenge of his sentence.

## CONCLUSION

Mr. Cobb's motion to extend his January 14, 2015 self-surrender date should be denied because he has avoided his sentence for long enough and cannot continue to use his health status to abuse the court's discretion. Further, his request for a sentence modification or, in the alternative, for leave to file a writ of *audita querela* should be denied because the appropriate statute to use for the remedy he seeks is 28 U.S.C. § 2255; he is barred from invoking this statute by the statute of limitations.

                                            Respectfully submitted

                                            PAUL J. FISHMAN
                                            UNITED STATES ATTORNEY

                                             \V.G. O'Malley

                                            V. Grady O'Malley
                                            Sr. Litigation Attorney